COONRADT FLIKE, Administrator, etc., Respondent, *v.* THE BOSTON AND ALBANY RAILROAD COMPANY, Appellant.

A corporation is liable to an employe for negligence or want of proper care in respect to such acts and duties as it is required to perform as master or principal, without regard to the rank or title of the agent entrusted with their performance.

As to such acts, the agent occupies the place of the corporation, and the latter is deemed present and consequently liable for the manner in which they are performed.

| 53 | 549 |
|----|-----|
| 124 | 498 |
| 53 | 549 |
| 136 | 81 |
| 53 | 549 |
| 142 | 420 |
| 53 | 549 |
| 166 | 232 |

It is the duty of a railroad company, in making up and dispatching a train, to supply it with suitable machinery and sufficient help for the business and journey which it is about to undertake, and if, from want of care in these respects, an injury happens to an employe upon another train, it is liable.

Accordingly *held* (Allen, Grover and Folger, JJ., dissenting), where an agent of defendant, whose duty it was to make up and dispatch trains, and to hire and station brakemen, sent out a heavy freight train with but two brakemen when three were required, and where the train broke in two, and in consequence of the want of necessary brakemen the rear part ran backward and collided with another train which had been dispatched five minutes after the first, killing the fireman thereof; that the defendant was liable.

Also, *held* (Allen, Grover and Folger, JJ., dissenting), that the fact that the agent had employed a third brakeman to go upon the train, who failed to appear, did not excuse the company from liability. Such hiring was only one of the steps to be taken to discharge the principal's duty; that, required the train to be supplied with sufficient help before it was dispatched. Nor is the company relieved although negligence may be imputed to the defaulting brakeman. This would only make the negligence contributory with the brakeman, but would not affect the liability of the company.

(Argued February 5, 1873 ; decided November 11, 1873.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, denying a motion for a new trial and ordering judgment for plaintiff on a verdict.

This action was brought to recover damages for the death of Henry Sipperly, plaintiff's intestate, alleged to have been caused by defendant's negligence. Sipperly was killed on the 3d of February, 1870. The circumstances of his death are sufficiently stated in the opinion.

A verdict was rendered in favor of plaintiff.

Exceptions were ordered to be heard at first instance at General Term.

*Geo. W. Miller* for the appellant. Defendant was not liable for the injuries to plaintiff's intestate occasioned by the negligence of Rockefeller, the head conductor. ( *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y., 564; *Warner* v. *Erie R. Co.*, 39 id., 471; 8 Al., 444; 28 Term, 63; 5 Welsb., H. & G.,

352; 10 Al., 233; 18 C. B., 797; *Morgan* v. *Vale of Neath R. R. Co.*, L. R., 213, vol. 1, p. 149; *Feltham* v. *England*, id., vol. 2, p. 33.)

*Matthew Hale* for the respondent. The rule that a master is not liable to one servant for an injury occasioned solely by the negligence of a fellow-servant does not apply to this case. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y., 52.) Insufficiency in the number of servants must be regarded as evidence of negligence. (*Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y., 562; *Hayes* v. *West. R. R. Corp.*, 3 Cush., 270.) Defendant is liable for the consequences of the head conductor's negligence in sending out the train with an insufficient force. (*Laning* v. *N. Y. C. R. R. Co.*, 49 N. Y., 521; *Brickner* v. *Same*, 2 Lans., 506, 517; S. C. [affirmed], 49 N. Y., 672.) Evidence of the usual number of brakemen on such a train was properly received. (*Steinway* v. *Erie R. Co.*, 43 N. Y., 123.)

CHURCH, Ch. J. The plaintiff's intestate was a fireman upon a freight train upon defendant's road, which left Albany at an early hour on a cold day. Some miles east of Albany eleven cars of another freight train, a short distance in advance, became accidentally detached and ran back and collided with the train on which the deceased was employed, by means of which he was killed. The evidence tended to show that the forward train was deficient in brakemen; that but two were aboard, when there should have been three, which was the usual number; and that if a third brakeman had been there he would have been stationed upon the eleven runaway cars, and with the brakeman on them could have controlled their impetus and prevented the accident. The company had at Albany an agent, called a head conductor, whose business it was to make up the morning trains, hire and station the brakemen, and generally to prepare and dispatch these trains.

The general rule that the employer is not liable to one servant or laborer for an injury resulting from the carelessness

or negligence of another servant or co-laborer, has been recently so fully considered by this court in the two cases of *Laning* v. *N. Y. C. R. R. Co.* (49 N. Y., 521), and *Brickner* v. *The Same* (49 id., 672), that discussion is unnecessary except as far as may be pertinent to determine its application to the facts of this case. This doctrine was first promulgated in England in 1837 (3 M. & W., 1), in South Carolina in 1841 (1 McMullan 385), and in Massachusetts in 1842 (4 Met., 49), and has been adopted in this and most of the other States in the Union. There has been a diversity of reasons given for its adoption, which have led to some confusion in its application. The reasons for the rule are well stated by PRATT, J., in the first case in which it was applied in this State (6 Barb., 231), and were in substance that the rule *respondeat superior* does not itself spring directly from principles of natural justice and equity, but has been established upon principles of expediency and public policy for the protection of the community; and that, in view of the unjust consequences which may ensue from its application for injuries by co-servants, the same principles of public policy demand its limitation, and that while the general rule was demanded for the protection of the community, the exception is demanded for the protection of the employer, especially in view of the manner in which the principal business of the country is now transacted. This view evinces the flexibility of the principles of the common law, which are capable of adaptation to new or changed circumstances, and enables courts to adjust the application of the principle not in obedience to a supposed arbitrary rule, but with such limitations and qualifications as best accord with reason and justice. In applying the rule we should be cautious not to violate the very principles upon which it is founded. While shielding the employer from unjust and burdensome liabilities, we should not withhold all redress from the employed for remissness and carelessness in respect to duties which fairly devolve upon the former as the principal, and over which the latter have no control. In 5 M., H. & G., 352, the court very justly

said: "Though we have said that a master is not generally responsible to a servant for an injury occasioned by a fellow-servant while they are acting in one common service, yet this must be taken with the qualification that the master shall have taken due care not to expose his servants to unreasonable risks."

The master is liable if his own negligence or want of care produces the injury, and this may be manifested by employing unfit servants or agents, or furnishing improper or unsafe machinery, implements, facilities or materials for the use of the servant. (25 N. Y., 562; 39 id., 468.) It was at first doubted by this court whether the exemption should not be limited to injuries by servants whose employment was the same (1 Seld., 492, per GARDINER, J.); but it has since been repeatedly held that injuries by servants or agents, engaged in the same general business or enterprise, are within the exemption. (Id.) Hence the difficulty of applying the rule in actions against corporations whose whole business can only by transacted by agents who are in some sense co-servants. In 39 N. Y., *supra*, the court decided that a corporation was liable if negligence causing an injury to a subordinate servant could be imputed to the directors, but did not establish any definite rule on the subject. The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge as master or principal, without regard to the rank or title of the agent intrusted with their performance. As to such acts, the agent occupies the place of the corporation, and the latter should be deemed present, and consequently liable for the manner in which they are performed. If an agent employs unfit servants, his fault is that of the corporation, because it occurred in the performance of the principal's duty, although only an agent himself. So in providing machinery or materials, and in the general arrangement and management of the business, he is in the discharge of the duty pertaining to the principal.

In the case before us it was clearly the duty of the corporation, in making up and dispatching the advance train, to supply it with suitable machinery and sufficient help for the business and journey which it was about to undertake; and if there was any want of care in these respects, which caused the injury, it is liable. Rockefeller had the general charge of this business, and, within the principle decided in the Laning case, represented the corporation itself.

It is claimed, by the counsel for the appellant, that the company are not liable, because the agent had, in fact, employed a third brakeman to go upon this train, who, by reason of oversleeping, failed to get aboard in time, and hence, that the injury must be attributed to his negligence, or, if attributable to the negligence of the general agent in not supplying his place with another man, such negligence must be regarded as committed while acting in the capacity of a mere co-servant, within the doctrine of irresponsibility. Neither of these positions is tenable. The hiring of a third brakeman was only one of the steps proper to be taken to discharge the principal's duty, which was to supply with sufficient help and machinery, and properly dispatch the train in question, and this duty remained to be performed, although the hired brakeman failed to wake up in time, or was sick, or failed to appear for any other reason. It was negligent for the company to start the train without sufficient help. The acts of Rockefeller cannot be divided up, and a part of them regarded as those of the company, and the other part as those of a co-servant merely, for the obvious reason that all his acts constituted but a single duty. His acts are indivisible, and the attempt to create a distinction in their character would involve a refinement in favor of corporate immunity not warranted by reason or authority. As well might the company be relieved if the train was started without an engineer, or without brakes, or with a defective engine. The same duty rested upon the company, though every man employed had died or run away during the night, and if negligent in discharging it, either by acts of commission or omission, whether in

employing improper help, or not enough of it, or in not requiring their presence upon the train, it is, upon every just principle, responsible for the consequences. Nor is the company relieved, although negligence may be imputed to the defaulting brakeman. The only effect of that circumstance would be to make the negligence contributory with the brakeman, but would not affect the liability of the company. It is unnecessary, therefore, to inquire whether the sleeping brakeman was so engaged in the common service as that the defendants could be exempted from liability if the injury was solely attributable to his neglect.

Assuming that the facts are, as the jury must have found, the liability of the company is clear. These heavy freight trains were dispatched only five minutes apart, and traversed a very heavy grade, and were liable, especially in cold weather, to precisely such accidents as did occur, in which event collisions, with fatal results, were almost certain to ensue. The principal protection in such cases is the prompt and efficient application of the brakes, and the utmost care should be exercised in providing a sufficient number of reliable men to perform this duty. If we were called upon to spell out a contract between the parties, it would be implied that the company agreed to use proper care not to expose the deceased to risks of this character. He was engaged upon another train in the discharge of his duty, and was not only in no way connected with the broken train, but he could neither know of nor provide against the defect.

No authority has been cited which would justify us in relieving the defendant from this liability, nor have I been able to find any. In 3 Cush., 270, the Supreme Court of Massachusetts intimate, although it was unnecessary to decide, that a railroad company is liable for an injury to an employe, caused by a deficiency of help upon another train.

Mr. Redfield, in a note in a recent edition of his work on Railways, expresses the opinion that corporations should be regarded as constructively present in all acts performed by their general agents, within the range of their employment;

and the tendency of judicial opinion, while it adheres to the general rule of irresponsibility, is against extending it.

The judgment must be affirmed.

PECKHAM, ANDREWS and RAPALLO, JJ., concur.

ALLEN, GROVER and FOLGER, JJ., dissent.

Judgment affirmed.