## YAGER'S ADM'R v. THE RECEIVERS.[1]

(Circuit Court, E. D. Virginia. January, 1882.)

1. **MASTER AND SERVANT—ASSUMPTION OF RISKS BY SERVANT.**
   A workman employed by railroad receivers as a bridge builder assumes all the ordinary risks incident to that employment, including the risk of the falling of a bridge at the critical time of adjusting its bearings after taking out the false work.

2. **SAME—FELLOW SERVANTS.**
   A workman engaging with railroad receivers as a bridge builder assumes the risk of all accidents incident to such work from the temporary oversight or mismanagement of a foreman who is proved to be a skillful bridge builder, and who is in charge of the work, but who also labors thereon as a mechanic.

The petition is filed in this case, as a branch of it, the property of the defendant company (the Atlantic, Mississippi & Ohio Railroad Company) being in the custody of the court, in charge of receivers who were in charge at the time of the accident which gave rise to the proceeding.

The petition claims damages to the amount of $10,000, for the killing of plaintiff's intestate, J. M. Yager, about the 1st day of July, 1878, by the falling of parts of a bridge of this railroad while in process of erection across a part of the Appomattox river, at Petersburg, Va., on which intestate was at

---

[1] This case has been heretofore reported in 4 Hughes, 192, and is now published in this series, so as to include therein all circuit and district court cases elsewhere reported which have been inadvertently omitted from the Federal Reporter or the Federal Cases.

the time at work, as employé of the receivers. The intestate was carried down by the bridge, and fatally crushed. The falling of the bridge is supposed to have been caused by its having got a few inches out of plumb while the builders were adjusting it to its bearings, and putting in end braces, just after having removed the false work or scaffolding which had supported the upper chords. There are two petitions of the plaintiff in the case. The original petition charges negligence upon the receivers in having failed to supply the requisite timber for building the bridge; thereby compelling a resort for timber to the false work supporting the upper chords, whereby the structure was rendered liable to fall, and for negligence in having put in supervision of the work a person or persons ignorant of the business, and negligent of the duties incident to it, "who, instead of suspending operations on finding that proper material was exhausted, not only used what was unsuitable for the purpose, but even went so far as to resort to the false work or scaffolding, the removal of which rendered the bridge dangerously insecure," the more so as the structure had not been secured in its proper position by the proper bolts, braces, and fastenings. The original petition was filed May 3, 1879. The answer of the receivers to it was filed January 27, 1880. Depositions were taken by plaintiff in April, 1880, by defendants in January, 1881, and were closed by plaintiff in May, 1881. Plaintiff's counsel asked leave to file an amended petition on the 16th December, 1881; and this motion was on that day heard, at which time also the case was heard in chief, with a saving to the defendants of the right, if the filing of the amended petition should be allowed, to answer that petition, and to take testimony responsive to the pleadings in their amended form if their counsel should so desire. The amended petition, repeating the charges of the original one, charges, further, that W. S. Hanna was the person in charge of the said work by whose order the intestate was on the bridge when it fell and killed him; that Hanna was manager of such work; that, in attempting to swing this bridge to its bearings, the sides fell some inches out of perpendicular, causing a tendency to careen and fall, which fact was perfectly obvious to, and was observed by, said Hanna; that the accident which then occurred could have been averted by props placed against the sides of the bridge or ropes, and guys fastened to the top; that Hanna failed to adopt these precautions and all others, and precipitated the catastrophe by sending men to the top of the bridge; that this top weight was further increased by the men who were there, attempting, on Hanna's orders, to haul up to the top heavy planks to complete the work in which they were engaged, and that the structure fell because of this overweight on the top. The plaintiff therefore charges that the said Hanna was culpably negligent in the discharge of his duties in and about the said work, and that the receivers are liable in damages for his negligence.

The evidence wholly fails to sustain the charges of the original petition in respect to a scarcity of timber. The weight of proof is in favor of the conclusion that there was abundant timber of suitable quality, and to spare. The weight of proof is also to the effect that the false work of the bridge had been removed at the time of the accident, in due course of construction, because it was no longer needed; that there were six lateral braces in place between the top chords of the bridge; that there were seven iron rods in place between the top and bottom chords, and properly tightened up; that between the bottom chords, which were of iron and heavy, the old bridge work was still intact, so that lateral braces could not be placed there; and that there was nothing in these respects so out of usual condition at such a stage in the erection of such a structure as to have caused the accident. The opinion of Hanna and of one or more witnesses who were at work on the bridge when it fell was that the falling of the two chords of the bridge by which the intestate Yager lost his life, occurring, as it did, while temporary end or knee braces were about being put into one of the end bents, was caused by the bridge having got three or four inches out of plumb, and by there being at the time, besides the weight of the chords and braces, the weight also of two men on top of the bridge, hauling up a two-inch plank for use as one of the temporary knee braces; rendering the structure

top heavy. The evidence is that the manner pursued in adjusting this bridge to its place after removing the false work was the same as had been pursued by the foreman, Hanna, in the construction of 12 or 13 bridges which he had previously built on this same plan; that there was not time after the bridge got out of plumb for the use of props, ropes, or guys for steadying it; that at the time of the accident it seemed plumb to the eye; that, as soon as it began to fall, alarm was given to all of the workmen to get out of the way, who all did make their escape except Yager, who seemed to be deaf or absent-minded; that on a previous occasion, at Lynchburg, of such an alarm, Yager had acted in a similar way; and that, if Yager had had presence of mind to obey the alarm when given, he might have escaped. The evidence as to Yager is that he had been for some time a regular hand with Hanna in bridge building, and was an employé of the authorities of this railroad. The evidence as to Hanna is that he was 58 years old at the time of the accident; that he was a bridge builder by occupation and profession, and had been so for 30 years; that he had principal charge of the bridge force of the Atlantic, Mississippi & Ohio road from Big Spring in Norfolk, a distance of 275 miles, as foreman; that he had been such foreman for 15 years; that he had been constantly employed during the time in building and repairing bridges; that he had built 13 bridges on the same plan as that at Petersburg, which was the fourteenth; and that the accident there was the first that had ever happened in his experience. I think it was stated in argument that Hanna has died since giving his deposition.

HUGHES, District Judge. The first question arising in this case is upon the pleadings, and is whether the plaintiff should be allowed to file his amended petition. If the petition makes a new case different from that made by the original petition, it cannot be admitted, for the reason, among others, that it is not brought within the 12 months allowed by statute to such claims; the general rule being that actions for tort die with the parties to them. If the plaintiff has any right to damages for negligence on the part of the receivers or their agents, it is not from general habits or acts of negligence, but can only be from some particular act properly charged in the pleadings, and proved in the evidence as the especial cause of his intestate's injury. These receivers and their agents might be guilty of acts, even of habitual and wanton negligence, resulting, some of them, in injury to other persons; but this plaintiff could recover nothing except from some particular act of negligence specifically charged in his complaint, and proved to have affected his intestate personally. Even in respect to the construction of this particular bridge, the receivers, through their foreman, might be proved to have negligently and defectively constructed other parts of the bridge from which other persons received, or might have received, injury; yet, if the plaintiff should not charge and show that his intestate was injured by or in consequence of the defective construction of the particular part from which he actually received injury, he could not recover. One man cannot recover damages for acts which injure or are capable of injuring other men, but from which he himself receives no injury, nor for injuries to himself not charged in his complaint. This is elementary law.

A plaintiff, to make a sufficient case, must charge and prove a particular act, or particular acts of negligence, and injury received therefrom. Now, the original petition in this case charges that

the premature removal of timbers in the false work of this bridge, by order of ignorant and incompetent persons put in charge of the work by the receivers, was the cause of the accident, while the amended petition charges that the accident was caused by the bridge getting out of plumb from the neglect of the foreman to use props, ropes, and guys, and from too much weight being put and allowed upon the top of the bridge. As the act of negligence charged in the original petition is disproved by the evidence, the case rests wholly upon the charge made in the amended petition. I am strongly of opinion that the charge in this last is of a different act of negligence from that made in the first petition; that the case set out is a new one, different from the first; and that the petition comes too late, because coming more than 12 months after the death of the intestate. The only alternative view to that just stated which occurs to me as even plausible would be to consider the falling of the bridge, however happening, as the act of negligence which constitutes the gravamen of the suit, and that the amended petition simply repeats the charge of that act, giving another explanation of the manner in which it occurred. As I am unwilling to base my decision in this case upon a technicality, I will adopt that view of the subject, and treat the case as presented by the amended bill.

Conceding at present, for the sake of the argument, that there was negligence on the part of Hanna, the foreman bridge builder in charge of the bridge of these receivers at Petersburg, the case belongs to that familiar class of cases, often difficult to treat, of an injury to one fellow servant from the alleged negligence of another. No principle of law is more firmly settled than the general principle that every person who voluntarily enters upon a particular employment for hire impliedly takes upon himself all the risks ordinarily incident to it, and especially that voluntary employés for hire in any work impliedly assume that risk of accident resulting in the due course of that work from the negligence of fellow servants. The principle is plain enough, and the reason of law obvious enough. But there are several classes of exceptions to the rule, and there is often difficulty in determining whether a particular case falls within the exception, or should be governed by the rule itself. It is not worth while to show by citation of law, for it must be conceded, that Yager, as a bridge builder, assumed the risks ordinarily incident to that trade; and the further question in this case is whether he did not also assume the risk of such negligence and oversight as might be committed by his foreman and co-employé in the execution of this job.

In the case of Hough v. Railway Co., 100 U. S. 213, referred to in the briefs of counsel, and relied upon by each, the United States supreme court, acquiescing fully in the general rule, was at pains to discriminate the case then before it from the class of cases falling within the general principle. The accident there happened from a defective cow catcher or pilot attached to a locomotive engine, by which the engine was thrown off the railroad track, and the engineer scalded to death. The engineer had complained to the master machinist and the foreman of the company about the defect, and had been promised

a number of times that the defect should be remedied; but this had never been done, and the accident was the result. In that case the defense invoked the general rule which excuses the master from liability to one servant for the negligence of a fellow servant, and also the more special rule of law (quite well settled as to cases proper for its application) that when an employé knows of a defect in a piece of machinery, and afterwards goes to work with knowledge of the continuance of the defect, he thereby waives his right to claim damages from the consequences. But the court overruled the defense on both points. As to the first one, it held that agents who are charged with the duty of supplying safe machinery are not, in the true sense of the rule respecting co-employés, to be regarded as fellow servants of those who are engaged in operating the machinery, but are employed in a distinct and independent department of duty from that of the operator of the machinery, and are charged with the master's duty rather than that of the fellow servant. As to the second point, the court ruled that, when a master has expressly promised to repair a defect, the servant subsequently using the machine can recover for an injury caused thereby happening at such a period of time after the promise as it would be reasonable to allow for its performance, and within any period which would not preclude all reasonable expectation that the promise might be kept. This case of Hough v. Railway Co. shows but one example of an exception to the general rule under consideration. It is a case of accident from the use of defective machinery. It is not a case of accident in bridge building. In that case the general rule as to the nonresponsibility of a master to one employé for the negligence of another was set out with much care, as follows (page 217):

"It is implied in the contract between the parties that the servant risks the dangers which ordinarily attend or are incident to the business in which he voluntarily engages for compensation, among which is the carelessness of those, at least in the same work or employment, with whose habits, conduct, and capacity he has, in the course of his duties, an opportunity to become acquainted, and against whose neglect or incompetency he may himself take such precautions as his judgment or inclination may suggest."

This general rule, thus carefully enunciated by Mr. Justice Harlan, is the one which must be held to determine the case at bar, unless it can be brought within some exception equally clear and well settled, because it must be assumed that Hanna and Yager were co-employés, one as foreman, and the other as journeyman, in an employment in which they had been working with each other for some time, and in which they had had full opportunity for becoming acquainted with each other's "habits, conduct, and capacity." I am not able to gather from the argument of counsel for the plaintiff what particular class of exceptions to the general rule of nonliability it is within which they suppose the present case to fall. It is not, as the case of Hough v. Railway Co. was, one of defective machinery known to have been out of repair by intestate and foreman, and which the intestate had a number of times complained of ineffectually. The court was dealing with such a case, and detached expressions appropriate to such a case cannot logically be applied to the present case. The court was showing

that that case was, by reason of its own particular facts, an exception to the general rule, and was at pains to set out the especial grounds on which it discriminated that case from those governed by the general law. Certainly, the case of a locomotive engine being thrown from a railroad track by a defective cow catcher, which the proper officers of the company had frequently promised, but had neglected, to put in repair, is a very different one in all its elements from that of the falling of the parts of a new bridge while in the course of erection from circumstances arising at the moment, equally unforeseen and unexpected by the foreman and the intestate journeyman.

Nor is the case of Flike v. Railway Co., 53 N. Y. 549, cited by plaintiff's counsel, at all in point. There the injury occurred from a freight train, on which the plaintiff's intestate was fireman to the locomotive, having run into a portion of another freight train running ahead of it, which had broken loose and become separated from the forward train, and could not be controlled in consequence of there having been an insufficient number, and not the usual number, of brakemen on the forward train. They were heavy freight trains, running at intervals of five minutes apart. It was the business of the head conductor stationed at Albany to make up the trains, and to provide them with brakemen and other train operatives. The court held that this stationary head conductor was to be regarded as representing the company in respect to some of the duties belonging to him; and, as to these, was not, in his relation to the fireman of a train, such a co-employé as was contemplated by the general rule of a master's nonliability. It held that the hiring of a brakeman, and assigning him to duty, and providing a train with a sufficient number of brakemen, was part of the company's duties, in relation to which the head conductor stood in the place of the company, and that, though he had other duties in respect to which he stood in the relation of co-employé to the intestate fireman, yet that his acts could not be divided up, and a part of them be regarded as those of the company, and a part those of its employés; saying, "As well might the company be relieved if the train was started without an engineer, or without brakes, or with a defective engine." The court, in this case, was divided four to three; and the exception to the general rule, which this precedent has not very firmly established, consists in a general agent of a company discharging general duties, from stationary headquarters, being distinguished from the class of employés contemplated by the general rule. Certainly, that case is wholly different from the one at bar, both in its facts and the principles involved. Hanna was an employé of the receivers of this railroad, a foreman engaged at manual labor in a special class of work along with other workmen. He was depended upon to take charge on the spot in person of every job of bridge building or repairing that was required on a long section of the railroad. But he did this in detail. He had no stationary headquarters. His service was not limited to giving orders from a central point to workmen at a distance, but he was personally present in executing each job, laboring with his own hands as a mechanic along with the rest of his gang in its execution. He was so actually

engaged when the accident under present consideration happened, and therefore I am of opinion that he was a co-employé of Yager in every particular and every sense, so carefully defined by Mr. Justice Harlan in Hough v. Railway Co., 100 U. S. 217, in the language I have quoted at length.

But I am not convinced by anything appearing in the evidence that there was in the falling of the bridge at Petersburg, on July 1, 1878, culpable negligence on the part of Hanna or any other co-employé of the plaintiff's intestate, Yager. Counsel for plaintiff assumes in argument that Hanna saw that the bridge was out of plumb a greater or less time before the accident occurred, and that he then increased the danger of falling from that cause by sending two men on top of the bridge, and ordering them to pull up heavy timbers after them, thus rendering it top heavy. Such is not my reading of the evidence. Hanna testifies that, judging by the eye, the bridge looked plumb, and that, believing it plumb, he went on to put in the cross-pieces in the end bent, as he had done before in building other bridges like this, and as he did in building this bridge itself shortly afterwards. He nowhere says that he saw that it was out of plumb before the structure began to fall. He testifies that, if he had known or apprehended such a thing, there were several ways in which he could have guarded against the accident; but it seems not to have occurred to him to resort in advance to these expedients, because such an accident had never before happened in his experience of 15 years. It is true that, in accounting for the accident after it had happened, he ascribed it to the fact that the structure had got a few inches out of plumb, and was overloaded at the top; but, in so doing, he does not state as a fact, or even imply, that he had seen that the structure was out of plumb before it began to fall. This accident may have been one of the many that periodically happen whose real cause cannot be predicated with certainty. It occurred in one of the long days of a hot summer, and the men engaged may have been partially unnerved and relaxed with the heat of the weather. Few men ever prove such a character for care and skill and experience as is proved for Hanna as a bridge builder; and I am unwilling to ascribe culpable negligence to him in the falling of this bridge at Petersburg.

The petition must be dismissed, but without costs. It must be dismissed—First, because the deceased man, Yager, in engaging with these receivers for wages, as a bridge builder, took upon himself all the ordinary risks incident to that employment, including the risk of the falling of this bridge at the critical time of adjusting it to its bearings, after the taking out of the false work, during the putting in of the upper braces of the end bent; second, because, in engaging in this occupation, he took upon himself the risk of all accidents incident to such work from the temporary oversight or mismanagement of his co-workman Hanna, the experienced and skillful foreman bridge builder, who was laboring with him, and directing this job; and, third, because the evidence does not show that the falling of this bridge was caused by any fault of the receivers, or by the culpable negligence of their foreman bridge builder, Hanna.