Hull, J.
This is a proceeding in error. The action was brought below by Alwilda M. Feller, administratrix of the estate of Eugene M. Feller, to recover damages on account of the death of Eugene M. Feller, her husband, whose death it was claimed was due to the negligence of the railway company. The case was tried and p verdict returned for $5,000, upon which judgment was entered, and it is to reverse this judgment that error is prosecuted here.
The deceased, Eugene M, Feller, at the time of the injury which caused his death, in January, 1899, was employed as a brakeman on the Lake Shore & Michigan Southern railway and was killed, in a collision in the Air Line junction yards, in the city of Toledo, on January 28, 1899, the collision occurring about six o’clock in the bvening, when it was dark. He was on a train that was coming into the yards, composed of about fifty cars, and which was being pulled by two locomotives. They were coming from the east, and as they entered the western boundary of the yard the train was switched onto tract No. 1, and a short distance inside of the yard they *607 struck a “string” of cars, being about fifteen cars,that were located on track No. 1 at the time. The engineer saw the cars when theyfj were^one or two car-lengths away. H threw on the air, operated the air brakes, and" the speed of the train was checked very suddenly and with considerable violence to the cars, but the locomotive struck the cars on the track, and the cars, or some of them in the train, were thrown together, and piled up upon each other, in such a manner that Feller was thrown off and fell between .two of ■the cars, was run over and both of his legs cut off, and he died within a few hours thereafter.
The negligence complained of was in having upon that ■track No. 1 the cars to which I have referred when this train was admitted into the yard.
The defense was, that if there was negligence, it was the negligence of a fellow servant of Feller’s,and that therefore the company was not liable. The general principle of law ■is, of course, well established, that an employer is not liable for the negligence of a fellow servant unless so made by statute. That is a risk one assumes in entering into the •employ of another. And the question here is whether the negligence was that of a fellow servant or of a servant superior to Feller, or of a servant or servants representing the master.
Word was received at the yard about five o’clock that this train would enter the yards in a short time, and Owen, the telephone clerk, sent word down, by telephone,to Webster, the switchman at the entrance of the yards, informing him, and Merrill, the assistant general yard-master, was informed, and he informed Morris,the day division yard-master, that this train was coming and to prepare the tracks for it; to clear the tracks. Morris told Merrill that these cars were standing on track No. 1, aud that it would be necessary to get them off before that train entered the yards, and he was ordered to clear the track and prepare for this train. He responded that he would have to have “power,” would have to have a locomotive with which to do this, and he was furnished one. Instead of beginning at once to clear the track No, 1, as he had been ordered to do, he began to take cars off another track, and they ran out of water for the locomotive and he was thus unable to get the cars on No. 1 off *608 that track in time. Morris testifies that he could have gotten those cars off track No. 1 in five minutes, had he commenced work at once; but running out of water and not being able to get another locomotive at that time, the time arrived when this train was to enter the yards, and Morris informed Webster, the switchman at the entrance of the yard, that the track No, l,upon which this train was to be switched, was not clear, and that ha should notify the engineer as he came through the switch to look out for cars upon this track. Webster remained on duty at his post until about half-past five, or five twenty-five, and was then relieved by Geneman, who succeeded him. I should have said that Webster, according to his testimony, told Geneman to notify the engineer as he came through, to look out for these cars, and Webster then went off duty leaving Geneman there, the cars still remaining upon track No. 1, upon which the coal train was to run when it entered the yards. The train was let in, was signaled to come on, and the switch thrown shortly before six o’clock, five minutes to six perhaps,it being dark, and they passed through the switch, and the engineer testified to seeing Geneman there, but Geneman gave him no warning or notification of the cars upon this track, the engineer testifying that he had no knowledge of what track they were going on until they passed into this switch and were switched off onto track No. 1, and he proceeded with no knowledge of any obstruction upon that track and supposing it to be clear. When within a short distance of those cars they were discovered by the engineer, the collision occurred and Feller was killed.
It was the duty of the division yard-master to clear this track, to have it in proper condition for this train to enter, and, having failed to do so, he sought to warn the engineer by directing the switchman to give him notice as the train passed through the switch. Geneman was not called as a-witness, he being the switchman who was on duty when the' train entered the yards. It was stated, in argument, that the reason he was not called was because as a matter of fact he forgot to give this notice to the engineer, and there was no claim made that he did give the notice to the engineer, but it is said that Geneman forgot to do it, and in that respect he was guilty of negligence. It is claimed that that *609 is the negligence and the only negligence that can be complained of here against the company, and that Geneman, the switchman, was the fellow servant of Feller, the brakeman, and that therefore the company is not liable for the injury that resulted to the brakeman, on account of the negligence of Geneman, or the negligence of Geneman and Webster combined. It is claimed by . defendant in error, that Webster might have been negligent in giving the notice to Geneman, or perhaps did not give him the notice at all, Geneman not being called as a witness.
The court below instructed the jury that the company would not be liab le under these circumstances for the negligence of either Geneman or Webster; that they were fellow servants of Feller's, and for that reason the company would not be liable, for their negligence, to Feller, but that if their negligence combined with that of Morris, the yardmaster, that then the company would be liable, for where the negligence of a superior servant or officer and that of a fellow servant combine and the two together cause the injury, that there the employer is liable. No objection was made to that statement of the law, and, as we understand it, it is the law as applied to fellow servants and superior servants on this question of negligence, and no exception whatever, was taken to the charge, and under the charge as given, the jury returned a verdict in favor of the plaintiff.
It is claimed by the defendant in error that the switch-men, Webster, and Geneman, in the performance of these duties at this time, should no* be considered as fellow servants, but as the representatives of the master, and that their negligence should therefore be held to be that of the master. It is undisputed that the negligence of Morris, the yard-master, would make the master liable. The proposition is established by all of the authorities, that it is the duty of the master to furnish to his employes a reasonably safe place to do their work and reasonably safe appliances and machinery with which to do the work. It has been held by many courts that a servant who is delegated by his master to perform this duty stands in the place of the master. A leading case is Northern Pacific Railroad Co. v. Herbert, 116 U. S., 642, 646. The opinion of the majority of the court was delivered by Judge Field, and in the syllabus of the case is this:
*610 “An employer is not liable for injuries to his servant ■caused by the negligence of a fellow servant, but this exemption does not extend to injuries caused by the carelessness or neglect of another person in the master’s service in an employment not common to that in which the person injured is engaged, and upon a subject in regard to which the person injured has a right to look for care and diligence •on the part of the other person as the representative of the common master.
“If no one is appointed by a railway company to look after the condition of its cars,'and see that the machinery and appliances used to move and to stop them are kept in repair and in good forking order,it is liable for the injuries caused thereby. If one is appointed by it charged with that duty, and the injuries result from his negligence, in its performance, the company is liable. He is,so far as that duty is concerned, the representative of the company.’’
And Mr. Justice Field says on page 647 of the opinion:
“It is-equally well settled, however, that it is the duty of the employer to elect and retain servants who are fitted and competent for the service, and to furnish sufficient and safe materials, machinery, or other means, by which it is to be performed, and to keep them in repair and order. This duty he cannot delegate to a servant so as to exempt himself from liability for injuries caused to another servant by- its omission, Indeed, no duty required of him for the safety and protection of his servants can be transferred, so as to ■exonerate him from such liability. The servant does not undertake to incur the risks arising from the want of sufficient and skilful co-laborers, or from defective machinery or other instruments with which he is to work.’’
The opinion contains a rather full discussion of that question. There was a dissenting opinion in this case but this ■stands as the opinion of the court, and as the Jaw, There are many cases upon this subject; I will only cite two or three of them. One in 53 N. Y., 549, where the court say :in the syllabus:
“A corporation is liable to an employe for negligence or want of proper care in respect to such acts and duties as* it is required to perform as a master or principal, without regard to the rank or title of the agent entrusted with their performance.
*611 “As to such acts, the agent occupies the place of the corporation, and the latter is deemed present and consequently liable for the manner in which they are performed.”
And in another case, 80 N. Y.,46, the court say, on page 52 of the opinion:
“We are of opinion that the cases” (mentioning several cases) “are decisive against this contention. We understand the principle of these cases to be, that acts which the master, as such, is bound to perform for the safety and protection of his employes, cannot be delegated so as to exonerate the former from liability to a servant, who is injured by the omission to perform the act or duty, or by its negligent performance, whether the non-feasance is that of a superior officer, agent, or servant, of a subordinate or inferior officer or servant to whom the doing of the act, or the performance of the duty has been committed. In either case in respect to such act or duty, the servant who undertakes, •or omits to perform it, is the representative of the master, and not a mere co-servant with the one who sustains the injury. The act or omission is the act or omission of the master irrespective of the grade of the servant whose negli.geace caused the injury,or of the fact whether it was or was not practicable for the master to act personally, or whether he did or did not do all that he personally could do by selecting competent servants, or otherwise to secure the safety of his employes.’’
The case as submitted to the jury by the court of common pleas does not necessarily require a discussion of this question or a determination of it by the court, as the court of common pleas held that the switchmen were fellow servants under these circumstances, with Feller, and the company was therefore not liable for their negligence alone; but, it was argued here, by counsel for defendant in error that, in mny event, the company was liable under these circumstances for the negligence of the switchmen, and we are asked to pass upon that question.
The claim of the plaintiff in error is, that they were fellow servants of Feller as held by the trial judge, and that the evidence is insufficient to show any negligence on the ✓part of Morris, the yard-master; that he having instructed Webster to give this notice to the engineer, that that con *612 stituted ordinary care on his part, and that therefore there was no negligence.
The rule laid down by these authorities and others that might be cited, seems to be that where a duty is delegated to a servant, that the master is required to perform in the-way of furnishing a safe place to wo~k or safe and sufficient appliances or machinery, that such a servant stands in the place of the master; that the master cannot delegate such duty and thus protect himself against negligence, Was' this duty which was delegated to these men the duty of the master? It was the duty of the railroad company to furnish a safe place for the operation of this train and the men who were employed upon it; it was their duty to furnish safe-tracks for the train to pass over, and if the ties or rails had been weak or rotten to the knowledge of the company, the company would be liable, and defective machinery, if the company had notice of it, would make the company liable for injury resulting therefrom. Now,was this act of such a character as to bring the company within the rule of furnishing safe appliances with which to work,and a safe place?' This train of fifty cars was ordered to enter these yards in the dark; they were given the signal that every thing was all right, to go ahead, The fifteen cars on track No. 1, were liable to cause great damage and injury to both the train and the men upon it; that rendered the track upon which this train was to run as unsafe as any such obstruction could-make it, The company, through its agents and officials,, had knowledge that these cars were there; they had knowledge through the yard-master and others, of the danger that there was in such a situation. Track No, 1 was in as-unsafe a condition as it would have been,perhaps,’f a bridge had been turned, or if the rails had been torn up,or the ties out of the track; and if that had been the case, if a part of the'track had been up,clearly it would come within the rule-making the master liable for not furnishing employes a safe place upon which to do their work, and it would be his-duty to give notice to k°ep off that part of the track. Now it was primarily the duty of the yard-master, Morris, to get those cars off, to see that this track was clear, before this train came in, and if he did not have the track cleared, to give notice to the engineer and to the men upon the' train. *613 that they should look out for the cars. He undertook to have that duty performed by Webster, and he in turn by Geneman, and no notice was given.
After an examination of this record and consideration of the authorities as we read them, it is our opinion that under these circumstances the switchman placed at this switch to notify this engineer of danger upon this track, stood in the place of the master, and that he could not be and should not be called a fellow servant with Feller. The track was in an unsafe condition, liable to cause loss of life, limb and property; the train was ordered in upon the track, and it was the duty of the master to notify the engineer of the condition of that track, and that duty could not be delegated to a fellow servant of Feller so as to protect the master against the negligence of suoh a servant. As I have said, this case was submitted to the jury upon the other theory that these men were fellow servants of Feller, and the jury were instructed that unless they found that Morris, the yard-master,was also guilty of negligence, that Feller could not recover, and it must be presumed that they found Morris was guilty of negligence, and that his negligence, combined with the negligence of Webster and Geneman, caused this injury.
It is claimed there was no evidence of negligence on the part of Morris, but we think there was a question to be submitted to the jury as to whether Morris did exercise ordinary care or not. When he was notified that this train of fifty cars was about to enter this yard and that these cars were in on the side-track, and was ordered to clear the track, it seems to us that whether he exercised ordinary care or not in delaying and neglecting that duty until he had cleared another track, of which there was no immediate necessity, apparently, was a fair question to be submitted to the jury, He delayed beginning the work upon track No 1 until the water was used up in the locomotive and then was unable to get those cars off. Whether it was ordinary care on his part, after he had failed to get the cars off the side track in time, to rely upon Webster’s giving notice to the engineer as he passed through the switch without taking any other precautions to notify the engineer or give him warning that these cars were upon this side-track, it seems *614 to us was also' a fair question to submit to the jury. That Gencman, the switchman, who was on duty when the train went through, was negligent, is, of course, clear. And w« think that the evidence is sufficient to sustain the verdict upon the law as given to the jury by the trial court upon the theory that the two switchmen were fellow servants. We can not say from this record that the jury were not warranted in finding that Morris did not exercise ordinary care. He was only a few hundred feet away when this train came in; I think the record shows seven or eight hundred feet; he was practically upon the ground,and relied upon the switch-man at the entrance of the yards giving this notice to the engineer, and provided no other means for notifying him or warning him of this obstruction.
E. D. Potter, for Plaintiff in Error.
Scribner & Waite, for Defendant in Error,
We are therefore of the opinion that the verdict was not against the evidence, nor contrary to law,and that therefore the judgment of thp court of common pleas must be affirmed.
Note— Harvey Scribner, for Defendant in Error: It was the duty of the yardmaster to have cleared the fcraok of the train of cars that were standing upon it to make a safe place for the freight train to go upon. This duty the yardmaster could not delegate to another. Whoever undertook to nerforin that duty would represent him and the company. Bailey on Master’s Liability, 129; Ry. Co. v. Herbert, 116 U. S., 642.
Question of negligence of yardmaster for jury. L. S. & M. S. R. R. Co. v. Mau, 9 O. C. C., 173.
If the yard-master could not delegate the duty of clearing the track to another and was negligent in failing to perform that duty, he could not relieve himself of responsibility by delegating to another the duty of informing the engineer that the tracks were in a dangerous condition. If the duty of the yardmaster to clear the track was a personal one and he failed to perform that duty, it was equally bis personal duty to inform the engineer that the tracks were not clear.
There was sufficient evidence of the negligence of the yardmaster to sustain the verdict and bring the case within the decisions of the supreme court in 32 Ohio St., 128; 19 Ohio St., 375, 384; 29 Ohio St., 448; 32 Ohio St., 494; 37 Ohio St., 279, 282, 40 Ohio St., 52; 42 Ohio St., 318; 1st Bates’ Digest, 875.
Engineer, superior of brakeman — Fellow Servants — See. 3365-22, R. S., 51 Ohio St., 130.