Thomson, J.
The appellant brought this suit against the appellee, in whose employ he was, to recover for injuries sustained by him while engaged in the performance of his duties, by reason, as alleged, of the negligent’ failure of the defendant to provide him with reason *287 ably safe means for reaching the place of his work. The answer was a denial. Upon the evidence' the court directed a verdict for the defendant. A verdict was so returned, and from the judgment which followed, the plaintiff appealed.
The only evidence concerning the accident and manner' of its occurrence, was the testimony of the plaintiff; and in that we find the following facts. The plaintiff was a day laborer, and worked in the pipe-fitting department of the defendant, in engine room No. 2. His employment came from C. S. Robinson, the defendant’s assistant general superintendent, who directed him to report to Mr. O’Brien, the master mechanic; the latter took him to Mr. Kelly, a foreman of the defendant, who assigned him work under the direction of a Mr. Nestrom. Mr. Nestrom was a workman who received higher wages than the plaintiff, and directed the manner of doing the work in which the plaintiff was engaged. Engine room No. 2 was three stories or more in height. Three large engines stood side by side on the ground floor, extending upwards nearly or quite to the top of the room. When the accident occurred, the plaintiff was working on the second story. Prior to that time there had been a passageway, or, as the plaintiff sometimes termed it, a gallery, extending entirely around the room, and protected by a hand-rail on the inside; but shortly before the accident, a portion of this passageway or gallery on the east side of the room had been removed and the floor torn out, to make room for a steam separator, circular in form, and about six feet in diameter, which rested on the ground floor, and extended upward through the opening, and a few feet above what had been the floor of the passageway. This separator was in practical contact with the east wall of the room. The portion of the passageway removed was about fifteen feet in *288 length. A valve was attached to the separator on its west side which projected ont towards the interior of the room some two or three feet. Above the valve was placed a circular valve-wheel, about eighteen inches in diameter, and, at its nearst point, six or eight inches distant from the separator. The valve-wheel lay in a horizontal position, was fastened to the valve, and was about three inches above the level of the remaining floor of the passageway. After the removal of the floor and before the valve-wheel was attached to the valve, the plaintiff and those with whom he was working, in order to reach the south side of the opening, walked around the room over the regular passageway or gallery. After the valve was attached and the valve-wheel put in place, the open space on the north side of the separator, being seven feet or. more in length, was spanned by a piece of plank about ten inches wide, one end of which rested on the gallery floor to the north, and the other on the flat valve-wheel. The plank was not fastened or secured in any way, but lay loosely on its supports. It was placed there about two days before the accident, but by whom the plaintiff did not know, and the workmen used it for the purpose of reaching the gallery floor to the south of the separator, instead of going around over the regular passageway. But between the end of the plank which rested on the valve-wheel and the gallery floor to the south there was another open space four or more feet in length. As to the manner in which this space was cleared the plaintiff’s recollection was indistinct; or, rather, he had no recollection at all on the subject. He thought it might have been passed by stepping from one side to the other, or there might have been another valve-wheel midway of the distance which could have been used for the purpose of crossing, or the two sides might have been connected by a plank. *289 Immediately before tbe accident, Nestrom crossed the plank from the floor on the north side of the separator to the valve, and thence proceeded to the floor on the south side, where there was some work to be done, and called to the plaintiff and the men with him, who were still on the floor on the north side, to “come on. ’ ’ The plaintiff went upon the plank for the purpose of crossing over, and when he had covered about half its length, it slipped from the valve-wheel, and he was precipitated to the floor below, a distance of about twenty-five feet. The consequence was that he sustained serious injury.
The law which plaintiff’s counsel conceive to be applicable to the facts, is thus stated by them:
“It is the duty of a master to use ordinary care to furnish and maintain a reasonably safe place for his servants to work in, and to use ordinary care and diligence to keep the machinery, instrumentalities and place in a reasonably safe condition. This duty is personal and can not be delegated, and if the master intrusts this duty to an agent, the latter, as to such duty becomes a vice principal, no matter what relation he may ordinarily sustain to the ser-, vant, and the master is liable for the negligent performance of said duty by said agent. ’ ’
And, starting with this unquestioned and unquestionable proposition, they reason as follows:
“Around this opening was the place where appellant was required to work. This plank was openly and continuously used as a passageway for two days. It was the only direct or feasible passageway from one side of the opening to the other at the place where ' appellant was working. It was admittedly an unsafe passageway. Can it then be said, as a matter of law, that the appellee had used ordinary care in furnishing appellant a reasonably safe place in which to work, or a reasonably safe passageway for him to *290 use in performing Ms work? Can it be said, as a matter of law, notwithstanding the fact that this plank had been used openly and continuously as a passageway for two days or more by a number of men, that appellee did not know, or by the exercise of reasonable care could not have learned, that the passageway was unsafe? The plank was a passageway, and whether appellee knew, or by the exercise of reasonable care could have learned that it was being used as such is, we think, clearly a question of fact. * * ******** *
u Whatever may have been the relation of Nestrom and appellant in their labors together in the pipe-fitting department, if Nestrom was' intrusted by appellee with the duty of furnishing a safe place, or safe ways, or safe appliances for work, as to those duties he was a vice principal. A master can not shirk his duty to furnish his servants a safe place in which to work, by delegating the duty to one bearing the relation in-his ordinary labors of fellow servant to those to whom the master owes the duty of furnishing a safe place, safe ways, etc.”
A fatal weakness of the foregoing argument lies in its assumptions. It assumes that the defendant had not furnished to the plaintiff a reasonably safe place in which to work, or a reasonably safe passageway for him to use in performing his work; and it assumes that Nestrom was intrusted by the defendant with the duty to furnish a safe place, or safe ways, or safe appliances for work. However, it is not the intention of counsel to bring into question the condition of the particular place where the plaintiff was working, or the appliances generally which were furnished to him. It was concerning a passageway only that the plaintiff testified. The assumption that the defendant had not furnished a safe passageway is contradicted by the facts. It had constructed *291 a secure and well-guarded way around the room. This way was open for use at the time of the accident, and, if followed, would have safely led the plaintiff to the same spot at which he was aiming when he went upon the plank. It was the passageway used by the workmen on the second story, the plaintiff included, to reach the place where they were working after the opening was made and before the valve was fastened to the separator. And the assumption that Nestrom was instructed by the defendant with any duty of furnishing safe ways is equally foundation-less. It was unnecessary to intrust Nestrom with such duty, for the defendant itself had already provided a secure and permanent way as part of the construction of its engine room. But the implication is that Nestrom was intrusted with the duty of furnishing another passageway, and that the duty was performed by laying the plank. The supposition is unwarranted. No such duty resulted from the nature of Nestrom’s employment, and there was no evidence from which it might, in the smallest degree, be inferred that he had any special authority in the matter, or that the defendant was directly or remotely responsible for the position of the plank. And the ■fact that after the plaintiff had been accustomed to the use of the regular passageway, he found a plank stretching from the floor to the valve-wheel on which Nestrom and others were walking, and of which he made use himself, gives rise to no presumption unfavorable to the defendant. The placing of the plank involved nothing in the nature of construction. Some one had picked it up, carried it to the place, and laid it there; and if its presence is attended by any presumption, it is that some of the workmen — possibly Nestrom — placed it over the opening to save himself and the others ■the inconvenience of walking around the room. *292 And the plaintiff seems to have taken some such view of the situation; for, in explaining a model which he had constructed, and which was used at the trial, he said: “My object was to show that there was two ways, a regular passageway, and we for expediency used this.”
The master is bound to use reasonable care in providing for the safety of his servants; it is his duty to furnish safe and suitable appliances, and keep them in proper condition for use; knowledge of defects in the appliances, to which danger is incident, is imputed to him, if by the exercise of reasonable diligence he might have discovered and remedied them; and he cannot escape liability for neglect of his duty by delegating its performance to an employee. By the delegation, the employee, without regard to his rank, or the grade of his employment, becomes a representative of the master, and his negligence is the master’s negligence. — Grant v. Varney, 21 Colo. 329.
It is sought here to charge the defendant with the consequences of the unsafe character of the contrivance the men were using, because they had used it for two days, and the defendant by the exercise of reasonable care could have ascertained and remedied its defects. But the rule invoked does not apply to appliances which are not furnished by the master, or by his direction, or which the law does not charge him with the duty of providing. In Flike v. R. R. Co., 53 N. Y. 549, it is said that the true rule is to hold the master liable for negligence in respect to such acts and duties as he is required to perform.— See also Crispin v. Babbitt, 81 N. Y. 521; Benzing v. Steinway, 101 N. Y. 547.
.If the condition of the passageway which the defendant did provide had become dangerous, and injury to a servant using it had resulted, the defend *293 ant’s negligence in failing to discover and remedy the defects might have furnished the person injured with a good cause of action against it. But we have here an unnecessary and- merely temporary makeshift, having a precarious hold on the outer edge of the valve-wheel; being necessarily unsteady and unsafe, because, as the wheel was higher than the floor, only a small portion of the surface of the plank could be in contact with the circular rim; and covering only-a portion of the space to be crossed. To call such a contrivance a passageway, is a misuse of the term. While it was the duty of the defendant to know the condition of the passageway it had constructed, it was not chargeable with knowledge of the location of the various pieces of plank on its premises, or of the temporary uses to which they might be put by its employees. We are not aware of any rule of law which requires a. master to place a watch over his servants to see that they do not set traps for themselves.
The assumption that Nestrom was intrusted by the defendant with a duty to furnish any way or appliance for the work, is purely gratuitous; but the supposition which it includes, that this piece of plank was in fact laid by him is entirely legitimate. Indeed, the situation and circumstances outlined in the evidence, render it extremely probable, if not quite certain, that Nestrom, or some of the men working with him, placed the plank across the opening. An acceptance of the hypothesis that Nestrom did it, leaves us just where we were. Nestrom was a fellow workman with the plaintiff; presumably by reason of his superior knowledge respecting the work to be done, he was authorized to direct the particular manner of its performance, and received higher wages than the others; but the work in which he was engaged had no connection with the furnishing of pas *294 'sageways'or seeing to their safety; so that in-respect to the plank, the company'was not bound by what he ■did or whát he knew. Nor if his call to the other workmen to “come on,” might be construed as a command to cross over on the plank, would the fact be of any importance. He had no right to give such an order, and they were at perfect liberty to disregard it. When the plaintiff' essayed to cross upon that plank, he took upon himself the risk of the consequences.
The evidence gave rise to no question for' the ■jury to determine, and the court properly directed a verdict for the defendant.
The judgment will he affirmed. Affirmed.