PENNSYLVANIA R. CO. v. GARCIA.

(Circuit Court of Appeals, Second Circuit. March 5, 1907.)

No. 140.

1. APPEAL—ADMISSION OF EVIDENCE—PREJUDICE.

Where in an action for injuries to a servant the jury were correctly charged as to the acts and omissions of defendant on which fault might be predicated, the failure to post rules not being among them, defendant was not prejudiced by evidence that witness had never seen or read any rules providing for the inspection or repair of tools in the tool shop, objected to because there was no charge in the complaint covering such question.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4178–4184.]

2. MASTER AND SERVANT—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff, an ignorant laborer in a railroad shop, had been employed by defendant for nine years to do low-grade work. He had not been employed for flange work to any great extent, but was ordered by his foreman to hammer the head of a defective fuller in making a flange on a sheet of hot iron, the fuller being held by the foreman. Plaintiff saw nothing dangerous about the fuller, and proceeded to strike the same, when a piece of steel flew from the head thereof into plaintiff's eye, causing its loss. Held, that plaintiff was not guilty of contributory negligence as a matter of law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1098–1105.]

3. SAME—FELLOW SERVANT.

Plaintiff's foreman had been informed prior to the accident that a fuller head by which plaintiff was injured was defective and dangerous, but with knowledge of such defect held the head against a hot iron plate and directed plaintiff to strike the same for the purpose of making a flange, resulting in plaintiff's injury by a piece of steel flying from the head. It also appeared that defendant's system for repair of tools was too cumbersome for practical operation, the servant being required to get an order therefor and have the same visaed by at least two different foremen before they could be repaired. Held, that the negligence of plaintiff's foreman acting as his fellow servant in using such dangerous tool was not the sole cause of the accident, and was therefore not sufficient to prevent a recovery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 515–534.]

In Error to the Circuit Court of the United States for the Eastern District of New York.

On writ of error to the Circuit Court for the Eastern District of New York to review a judgment entered upon the verdict of a jury in favor of the plaintiff for $1,500 damages for the loss of an eye while in the employ of the defendant in its shops at Jersey City, N. J.

H. G. Ward, Geo. H. Emerson, and Robinson, Biddle & Ward, for plaintiff in error.

Henry F. Dossenheim and Theodore Prince, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. At the date of the accident—February 6, 1900—the plaintiff was in the defendant's employ as boilermaker's assistant. At that time Rooney, the gang boss, Finnigan, a boilermaker, and the plaintiff were engaged in turning the flange around a square opening in a sheet of hot iron. Finnigan was holding the sheet on an iron block, Rooney was holding a heavy steel hammer, called a "fuller," against the heated iron sheet and the plaintiff was striking the fuller with a button-set hammer. While so engaged a spicula of steel flew off the flat end or head of the fuller into the plaintiff's eye, causing its loss. The testimony is undisputed that the head of the fuller was worn down and cracked on its edges, the ragged portions extending around the four sides and being from an eighth of an inch to a quarter of an inch apart. Complaint as to the dangerous condition of the fuller had frequently been made to the gang boss, Rooney.

The first assignment of error argued is based upon the ruling of the trial court in permitting the witness Finnigan to answer the following question:

"Were there any rules posted for the inspection or repair of tools in the tool shop?"

The question was objected to upon the sole ground—

"That there is no charge in the complaint that covers this question."

The answer was:

"I never read any. I never saw any rules there posted."

It might be argued with considerable plausibility that the testimony was admissible under the pleadings and that the objection was not comprehensive enough to present the question whether the testimony was incompetent or immaterial, but we prefer to rest our decision upon the broader ground that the answer to the question was in no way prejudicial to the defendant, for the reason that the jury were correctly instructed as to the acts and omissions of the defendant of which fault might be predicated, the failure to post rules not being among them.

In deciding defendant's motion to dismiss the complaint the court said:

"I shall not submit the question to the jury whether the defendant was negligent in not maintaining a rule; but of course I have allowed that evidence to come in so that the jury should know just what had been done or had not been done, and thereby have been able to determine whether the system for the protection of the employés with regard to the use of this tool was in accordance with the duty which rested upon it."

Subsequently the court refused the following request of the plaintiff:

"Eighth. In determining the question, therefore, of whether or not the defendant was negligent, the jury may take into consideration the question of whether or not the plaintiff should have made rules for the inspection of tools

and whether or not the tools were inspected in the manner that the nature of the case required.

"The Court: The eighth I refuse to charge."

In these circumstances we are convinced that the injurious effect of the answer, assuming it to have been improperly admitted, was negligible. The jury were, in effect, instructed to disregard it.

It is argued that a verdict should have been directed for the defendant for the reasons, first, that the plaintiff knew or should have known of the dangerous condition of the fuller; and, second, that the accident was occasioned by the negligence of a fellow servant.

We think the question of contributory negligence was properly submitted to the jury. The plaintiff was not a man of superior intelligence; he understood English imperfectly and gave his testimony through an interpreter. He had been employed by the defendant for nine years previous to the accident, but always, apparently, in work of the lowest grade, such as breaking screws, making rivets and assisting in making the fires. He was employed on the flange work only a day and a half, although on previous occasions the foreman had sent for him to assist on similar work. He was a little near sighted. An oculist who examined the plaintiff's remaining eye testified that he found there a mascula of the cornea existing from childhood, "causing a great deal of obscurity of vision without total loss of sight." The plaintiff testified that he did not notice anything about the fuller at the time of the accident; that when ordered to do flanging work he did it; otherwise not. On the morning in question he had been working on the flange but two hours when the accident happened. The defendant offered no testimony and there is no contradiction of the plaintiff's statement that he was entirely ignorant of the dangerous condition of the fuller. Here was an ignorant laborer, ordered by his boss to hammer the head of a fuller, which was being held by the boss himself. Seeing nothing dangerous about the fuller and supposing that he might do so in safety he proceeded with the work and was injured. In these circumstances we think the court was not justified in saying as matter of law that the plaintiff was guilty of negligence. The question was for the jury. Hayward v. Key, 138 Fed. 34, 70 C. C. A. 402.

The other contention of the defendant that the accident happened through the negligence of the plaintiff's fellow servants and particularly through the negligence of the gang boss, Rooney, presents a question of more difficulty. Rooney was actually holding the dangerous tool at the time of the accident and it is undisputed that his attention was frequently called to its condition, with the statement that someone would be injured if it were not repaired. Assuming the negligence of Rooney in using a tool which he knew to be dangerous, the defendant is not exculpated unless Rooney's fault was the sole cause of the injury. If the injury were due to the concurring negligence of Rooney and the defendant, the latter is liable. In short, if the defendant is shown to be at fault it must respond. In Flike v. B. & A. R. Co., 53 N. Y. 549, 13 Am. Rep. 545, the court, at page 555, of 53 N. Y. (13 Am. Rep. 545), says:

"Nor is the company relieved, although negligence may be imputed to the defaulting brakeman. The only effect of that circumstance would be to make

the negligence contributory with the brakeman, but would not affect the liability of the company."

Was the defendant at fault? Upon the question of the defendant's duty to provide a suitable system of repair the court said:

"The master ought also to provide some safe system for having tools repaired. There are several ways. In other words, he should so conduct his business that there will be a practical scheme whereby these tools may, as they become defective from time to time, be either repaired, or other tools taken in their place. * * * It is for you to say, as I look at it, whether there was a practice there for supplying tools, or for repairing tools, that showed that the master had used the ordinary care of a good business man, and whether it was maintained; whether it was kept in operation in such a way that the master continued to be a good master within the rules which I have stated; whether he was a master who was faithful to his contract, as I have suggested the contract to you. If you find that he was, there certainly is no cause of action here."

It is contended by the plaintiff that the defendant's repair system was so cumbersome, complicated and inadequate as to be unworkable in practice. The fuller had been in a cracked and ragged condition for five months and was daily growing worse. The gang boss was repeatedly notified and yet it was unrepaired. Why? The testimony shows that a workman, employed in the gang in question, desiring to get a tool repaired would have to go first to the flange turner, Rooney, for an order upon Murphy, the foreman of the boiler shop. If Murphy approved he would give an order for the repair and the tool was then taken to the blacksmith's shop for that purpose. The men worked only about 20 feet from the blacksmith and yet a workman could not take an injured tool to the shop and have it repaired. He could not even get the order from Murphy unless the request was visaed by Rooney. The deplorable accident which destroyed the plaintiff's eye was not an unnatural result of so complicated a scheme. It is not improbable that the workmen continued to use unsuitable tools rather than subject themselves to all the circumlocution necessary to secure their repair. We do not say that the defendant's system was inadequate, but we think that sufficient appeared to warrant the submission of the testimony to the jury.

We have examined the other assignments, with the result that we find no reversible error.

The judgment is affirmed.